## TRABUE & LUCAS *vs.* JAMES BANKHEAD.

## April Term, 1875.

ASSIGNEE HAS IN EQUITY ONLY THE RIGHTS OF THE ASSIGNOR AGAINST INNO-
CENT THIRD PERSONS.—Where, pending a litigation carried on in equity in
the name of the assignor, the fund to which the assignor is eventually found
entitled is loaned to him, under order of court, upon note with good security,
the assignee, who subsequently and after the insolvency of the assignor
intervenes for the assertion of his rights, must stand in the shoes of the
assignor, and as the latter would have no equity against his sureties, neither
has the former.

ASSIGNEE ASSERTS HIS RIGHTS BY SUPPLEMENTAL BILL.—The assignee of a
claim in litigation in chancery can only obtain the benefits of the suit as a
party by an original bill in the nature of a supplemental bill, and his rights
as against persons having no previous notice will date from the filing of
his bill.

*Ed. Baxter*, for assignee.
*G. M. Fogg*, for sureties.

THE CHANCELLOR:—Long, having certain hogsheads of
tobacco in the hands of Hamilton for sale, on the 22d of
July, 1860, by order in writing, directed Hamilton to sell the
tobacco and pay the proceeds to the defendant, Bankhead, on
a debt due to him from Long, and by virtue of which Bank-
head had already attached the tobacco. On the 2d of
August, 1860, the complainants, Trabue & Lucas, filed
their bill in this court against Bankhead, Hamilton, and
Long, claiming priority of satisfaction for a debt due to
them from Long on an order from him. By consent of
parties the tobacco was sold by Hamilton, and the proceeds
paid to the clerk, to be loaned out by him, "and the note or
notes to be held by him subject to the decision of the cause."
In pursuance of this order, on the 29th of May, 1861, the
clerk loaned out a sufficiency of the fund to meet the debt
of Trabue & Lucas, to a third person, and the residue he
loaned to Bankhead, taking his note at six months, with G.
M. Fogg and N. Hobson as his sureties. Mr. Fogg was
Bankhead's lawyer in the case, and knew the facts to be as
hereinbefore stated, but did not know then, nor until the

filing of Letitia J. Harris' petition in the cause, as hereinafter
mentioned, that Bankhead had assigned his debt on Long
to B. D. Harris.

As a matter of fact, Bankhead had, on the 14th of September, 1860, delivered the note held by him on Long to
an attorney for collection, taking his receipt, and on the 4th
of October, 1860, he had assigned this receipt to B. D.
Harris, in writing. On the 31st of October, 1860, Bankhead filed his answer to the bill of Trabue & Lucas, claiming,
as the holder of said note, to be entitled to the proceeds of
the cotton, and saying nothing of the assignment to Harris.
It does not appear that Harris gave notice to any person of
the assignment to him of the lawyer's receipt, or set up any
claim to the proceeds of the tobacco sold. He died intestate, and Letitia J. Harris was appointed and qualified as
his administratrix. On the 4th of November, 1869, she
filed her petition in this cause against Bankhead, Fogg, and
Hobson, setting out the facts touching said assignment, stating that the litigation had been compromised with Trabue &
Lucas, and seeking—Bankhead having in the meantime
become insolvent—to hold his sureties liable to her, as
administratrix, for the money so loaned to Bankhead as
aforesaid, with interest. Long has never disputed Bankhead's right to the proceeds of the cotton, and, on the
4th of November, 1869, a decree was entered, with the
consent of the said Letitia J. Harris, administratrix,
disposing of the funds in the cause between her and the
complainants, except that part of the funds represented by
the note of Bankhead. The question now raised is whether
the loss occasioned by the insolvency of Bankhead should
fall upon his sureties, or on the petitioner.

The assignment and delivery of the attorney's receipt for
the note carried the equitable interest certainly, and it may
be the legal interest, in the note to the assignee, as against
the assignor and all persons claiming under him, together
with the benefit of collateral securities, and, among other
things, with the benefit of legal proceedings in the name of

-the assignor to enforce the debt. *Gayoso Savings Institute* -v. *Fellows*, 6 Coldw. 467. But, to secure the full benefits of :such legal proceedings, the assignee must give notice ; otherwise, he will be bound by the proceedings in the suit after the alienation, and before he becomes a party. Story Eq. Pl. § 351. The assignee can only become a party to the suit by an original bill in the nature of a supplemental bill. ,Story Eq. Pl. § 348 ; *Foster* v. *Deacon*, 6 Madd. 59 ; *Drever* v. *Mawdesley*, 4 Myl. & Cr. 94 ; *Northman* v. *Insurance Cos.*, 1 Tenn. Ch. 312. As between the assignee and the debtor, or any other party in interest to the suit, the former would be clearly bound by the proceedings in the cause until he gives notice or becomes a party. *Pentland* v. *Quarrington*, 3 Myl. & Cr. 249. A payment to the assignor without notice would undoubtedly be good, and any act of the assignor to the prejudice of the parties to the suit would bind the :assignee. And any right acquired or loss incurred by the debtor, on the faith of the ownership being in the assignor, would prevail in equity against the assignee. *Hobson* v. *Stevenson*, 1 Tenn. Ch. 203.

The fund derived from the sale of the tobacco undoubtedly belonged to Bankhead, under and by virtue of the order of Long and his own attachment, subject only to the rights of the complainants, the only persons contesting his right. If, now, Hamilton had paid the proceeds of the tobacco directly to Bankhead, without notice of the assignment to Harris, the payment would have been good, and would have protected him against all the world, except Trabue & Lucas. The fund belonged to Bankhead, and he needed no decree to perfect his rights, except as against Trabue & Lucas. If he get the fund into his possession by borrowing, or otherwise, he cannot be made to account for it, except to Trabue & Lucas. So far as this case is concerned, there can be no decree which can by any possibility affect Bankhead's right, except in favor of the original complainants. If the clerk were to collect the note for the money loaned, the fund would be Bankhead's, and the court would not only never

order it to be collected from him to be immediately returned, but would undoubtedly enjoin the clerk from collecting it, either at his instance or that of his sureties.

Undoubtedly Bankhead's assignee had the right in his life-time, and his administratrix has the same right since his death, to come in by an original bill, in the nature of a supplemental bill, to assert the rights acquired by the assignment. This has been done by the administratrix by the proceeding of the 4th of November, 1869, in form a petition, but in substance an original bill. Whatever relief she was entitled to have on the 4th of November, 1869, by original bill, she may now have by her petition.

What, then, were her rights, under the circumstances, on the 4th of November, 1869? Manifestly, only such as Bankhead himself was on that day entitled to as against the parties and *quasi* parties to the original suit. If he had received the proceeds of the tobacco directly from Long or Hamilton, he would have no right to make them pay it over again; neither would she. If he had received it from the clerk, with or without the order of court, he could not make him pay it again; neither can she. He did receive it upon giving security, but, if the security had been worthless when taken, he would have no remedy against the clerk; nor would she. The security was given by him, and the sureties became, thereby, parties to the suit; of course he cannot make the sureties pay the money because he is insolvent; neither can she. The assignee, by his silence and acquiescence, made the assignor his agent, by whose acts he is bound. He did more; he left him the sole plaintiff, to hold himself out to the world as the owner of the fund. If Bankhead committed a fraud on Harris by concealing the assignment, Harris has been guilty of a greater fraud upon innocent parties by concealing his rights. I am clearly of opinion that his administratrix is only entitled to a decree against Bankhead, and not against his sureties.